IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MILDRED OLIVER, <br><br> *Plaintiff,* <br><br> v. <br><br> VIRGINIA DEPARTMENT OF CORRECTIONS, ET AL., <br><br> *Defendants.* | CIVIL ACTION NO. 3:09-CV-00056 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

Seeking declaratory and injunctive relief under Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12131 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, plaintiff alleges that the Virginia Department of Corrections ("VDOC") and the Virginia Department of Correctional Education ("VDCE") have failed to accommodate her blindness. Plaintiff, an inmate at the Fluvanna Correctional Center for Women ("Fluvanna")[1] in Troy, Virginia, also seeks damages, costs, and attorneys fees. Defendants have moved for summary judgment (docket no. 14) on the ground that plaintiff failed to exhaust all available administrative remedies prior to filing the instant suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Additionally, plaintiff has filed a motion for summary judgment (docket no. 21), and defendants have filed a cross-motion for summary judgment (docket no. 34), supplemented with separate briefs for VDCE (docket no. 35) and VDOC (docket no. 36).

---

[1] According to the "Offender Locator" feature of VDOCs public Web-site, Plaintiff's VDOC Number is 1147550, her inmate number is 342844, and her projected release date is November 21, 2022.

The pending motions have been fully briefed, and are scheduled for a hearing on April 8, 2010. However, a hearing is not necessary.[2] Upon review of the record, I must grant defendants' motion for summary judgment (docket no. 14) on the ground that plaintiff failed to exhaust all available administrative remedies. Accordingly, the cross-motions for summary judgment on the merits will be denied as moot, and the case will be dismissed and stricken from the court's active docket.[3]

I.

Plaintiff alleges that she has been "totally blind" since the age of 21. Plaintiff contends that, because of her blindness, the VDCE denied her request for enrollment and instruction in the General Education Development ("GED") program. Plaintiff asserts further that, because of her disability, her access to recreation and exercise is limited, and that she has been denied a recreational therapist or other trained personnel to provide her with appropriate programs. She complains that, because of her blindness, she is unable to communicate with her lawyers under circumstances where she may discuss confidential matters, because any letters that she writes must be dictated, and she has been denied an accommodation to telephone her lawyers where no one can overhear the conversation. Plaintiff states that "[s]he has requested but has been denied access to a computer with voice recognition and training for its use." Plaintiff contends that "she needs additional instruction in Braille." She adds that she "cannot directly access the prison

---

[2] The facts and legal contentions are adequately presented in the material before me. Oral argument would not aid the decisional process.

[3] Plaintiff has also filed a motion to dismiss (docket no. 20) without prejudice one of her claims "because that claim has become moot due to a change in prison procedure." That claim, asserted in paragraph 8(G) of the complaint, alleged that plaintiff "has had the experience of other prisoners taking food from her plate without permission" and that "[h]er request to be monitored during meals [had] been denied." Plaintiff submits that defendants do not object to the dismissal. The motion to dismiss (docket no. 20) will be granted.

rules," "the prisoner handbook," or "written bulletin announcements," and "[h]er request that these be provided in Braille has been denied." While plaintiff has had other inmates assigned to perform as aides to her, "[h]er request that the aides receive basic training in assisting the blind has been ignored." Plaintiff "finds herself humiliated, embarrassed, anxious, nervous, scared and worried because she is dependent on people who demonstrate little concern or care for" her well-being.

## II.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and is properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at at 256-57.

**III.**

*A.*

The VDOC has established a grievance process with which inmates are oriented upon intake into the VDOC. The VDOC grievance process requires that, prior to submitting a regular grievance, an inmate must demonstrate that she has made a good faith effort to resolve her complaint informally. An informal resolution is attempted by submitting an informal complaint form to the appropriate department head. Staff members are required to respond within 15 calendar days; the 15-day period is an attempt to ensure that informal responses are provided prior to the expiration of the 30-day period within which an inmate may file a regular grievance, should she be dissatisfied with the outcome of her informal complaint. When an inmate files a regular grievance, the regular grievance must meet the filing requirements of Division Operating Procedure 866. If the regular grievance is deficient or has been submitted inappropriately, e.g., without first having been reviewed in the informal complaint stage, the inmate must be informed within two working days of the receipt of the regular grievance. If a regular grievance is deemed inappropriate for intake, the reason for its rejection is noted upon the reverse side of the grievance form, and the inmate is instructed as to how she may remedy the intake deficiency. If an inmate disagrees with the intake decision, she may forward the grievance to the Regional Ombudsman for an appeal of the intake determination.

Once a regular grievance is found appropriate for intake, a Level I review is conducted by the warden or superintendent of the inmate's facility. A Level I decision informs an inmate that, when an inmate is dissatisfied with a Level I determination, the inmate may initiate a Level II appeal to the office of the Regional Director, the Health Service Director, or the Chief of Operations for Classifications and Records. Level II is usually the final level of review,

although some matters may be appealed to Level III, the office of the Deputy Director or the Director of the VDOC.

## B.

The parties' exhibits include an affidavit from Fluvanna's grievance coordinator and a record of documents plaintiff has submitted to prison officials relevant to the issues raised in this lawsuit.[4]  On March 23, 2005, plaintiff received orientation regarding the grievance procedure at Fluvanna.  In December 2007, plaintiff submitted a regular grievance, dated December 12, 2007, and received by the grievance coordinator on December 14, 2007, stating, "Its [*sic*] been over 2 years since I've not been able to attend GED/Lip class,"[5] that her good conduct level was affected by her inability to enroll in classes,[6] that she had "followed the institutional protocol in addressing this matter but to no avail," and that she wanted an "instructor who teach[es] [B]raille so it can be translated to me so I can attend GED school, mandatory programs and books on [B]raille."  The grievance was deemed inappropriate for intake, and was returned to plaintiff because the issue was "Non-Grievable," given that it concerned "[m]atters beyond the control of the Department of Corrections."  Plaintiff did not appeal that intake decision to the Regional Ombudsman.

---

[4] The parties have filed a joint motion to supplement the record (docket no. 39), which will be granted.  The parties have not submitted courtesy copies of any of their submissions, including the "supplemented" record, and the point of the joint motion is not at all clear.  Regarding two of plaintiff's regular grievances, apparently the grievance coordinator's records included responses that had been issued on both a regular grievance form and on an informal complaint form; plaintiff's records included only responses issued on informal complaint forms.  Regardless of the form used to issue a response to these two regular grievances, plaintiff never lodged any appeal of any adverse intake decision to the Regional Ombudsman, nor did she pursue any Level II or Level III appeals at Fluvanna or with the VDOC.  Plaintiff does not contend otherwise.

[5] The parties have not defined "lip class."

[6] Good conduct credits reduce the amount of time a prisoner must spend serving a sentence.  Virginia Code § 53.1-196.

On May 4, 2009, plaintiff submitted an informal complaint stating that she wanted a recreational therapist to provide her with recreational programs for the blind. The informal complaint was returned to plaintiff with the adverse intake determination that it was a "request for services," and plaintiff was instructed to submit a request to Ms. Cox (the operations officer) or to the Warden. On May 25, 2009, plaintiff submitted inmate request forms to Ms. Cox and the Warden. In response, plaintiff was instructed to contact the medical department for a screening regarding her disability and the necessity for a recreational therapist. On June 11, 2009, plaintiff submitted another inmate request for occupational therapy to Ms. Cox, stating the following:

> I am not able to participate in most of the recreational and exercise activities due to my blindness. I don't know what a recreational therapist would recommend nor do I know what activities would work for me. I have forwarded a request for screening to the medical department as you suggested.

Ms. Cox returned the request, noting that the issue had been previously addressed. Plaintiff never submitted a regular grievance regarding the issue of a recreational therapist.

On May 4, 2009, plaintiff submitted an informal complaint stating that she wanted to be able to speak to her lawyers in a location where she would not be overheard. The informal complaint was returned to plaintiff at the intake level because it was a request for services. The intake decision further noted that the issue had been addressed in a meeting with plaintiff on May 11, 2009, when it was explained to plaintiff that her request presented a security issue, and that using the telephone in the "Counselor's office is not an option." On June 11, 2009, plaintiff submitted an inmate request form to her counselor, stating that she did not mind security staff observing her when she was on the telephone, but that she did not want them to hear what she was saying to her attorneys. The counselor responded that plaintiff was required to use the

inmate telephone system due to security reasons. On June 29, 2009, plaintiff submitted a regular grievance stating that she was unable to have private conversations with her attorneys, and that her inmate request to do so had been denied. The grievance was returned to plaintiff with the adverse intake decision that she had not first used the informal complaint procedure, and adding that her grievance issue was a request for services. Plaintiff did not appeal that intake decision.

On May 4, 2009, plaintiff submitted an informal complaint stating that she was often unaware of notices and other information posted in writing for the benefit of prisoners, and that she "would like the inmate handbook and all notices and other information given to prisoners to be given to [her] in Braille. . . ." The informal complaint was returned to plaintiff with the adverse intake decision that it was a request for services. On May 25, 2009, plaintiff submitted an inmate request form to the Warden and the operations officer repeating her request for written information to be communicated to her in Braille. In response to the inmate request form, plaintiff was informed that it was the responsibility of the aide assigned to her to read posted notices to her, that she could also seek the assistance of her counselor, and that the handbook was being revised and when it was completed plaintiff's aide would read it to her. On June 11, 2009, plaintiff submitted a regular grievance stating that she had requested to have the inmate handbook given to her in Braille, that the request had been denied, and that plaintiff wanted the handbook in Braille. The grievance was returned to her with the adverse intake decision that it was a request for services. Plaintiff did not appeal the intake decision.[7]

---

[7] The joint motion to supplement the record indicates that the grievance coordinator's records included the same response to this regular grievance on both a regular grievance form and on an informal complaint form. Regardless of the form of Fluvanna's response, there is no dispute that plaintiff submitted a regular grievance, received an adverse intake decision, and plaintiff did not appeal the intake decision. And, although plaintiff's failure to exhaust all administrative remedies precludes me from considering the merits of her complaint, I note that being obliged to have prison communications read aloud to her, and being unable to receive prison
(continued...)

On May 25, 2009, plaintiff submitted an inmate request form to the operations officer and the Warden, stating that she would like to have access to, and training to use, a computer with voice-activated software so she could "write to people without other prisoners knowing my confidential and private information." The operations officer responded that "[s]peaking into a computer will not ensure confidentiality since there are other inmates in the library." The operations officer added, "You may sign up for typewriter or computer use in the library. You have told the Warden that you are able to use a regular keyboard." On June 11, 2009, plaintiff submitted a regular grievance stating that she could not "communicate with the outside world without an aide writing down what" she said, that she "would like to have access (and training to use) a computer" equipped with voice-activated software, and that she "would like to" be able to use this computer "in a situation where other prisoners cannot hear my confidential and private information." She added that she had placed this request with the operations officer and that it had been denied. The regular grievance was returned to plaintiff with the adverse intake decision that it was a request for services, and plaintiff did not appeal the intake decision.[8]

---

[7](...continued)
communications in Braille, does not indicate that plaintiff was "excluded from participation in or denied the benefits of [a] service, program, or activity, or [was] otherwise discriminated against, on the basis of her disability," as required, "[i]n general," for "a plaintiff seeking recovery for violation of either statute," i.e., Title II of the ADA or the Rehabilitation Act. Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005).

[8] Once again, the joint motion to supplement the record indicates that the grievance coordinator's records included the same response to this regular grievance on both a regular grievance form and on an informal complaint form. Regardless of the form of Fluvanna's response, there is no dispute that plaintiff submitted a regular grievance, received an adverse intake decision, and plaintiff did not appeal the intake decision. And, although plaintiff's failure to exhaust all administrative remedies precludes me from considering the merits of her complaint, being denied training for and use of voice-activated software and the ability to write letters in confidence does not indicate that plaintiff was "excluded from participation in or denied the benefits of [a] service, program, or activity, or [was] otherwise discriminated against, on the basis of her disability." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005).

The complaint includes allegations that plaintiff has experienced issues with some of the inmates who are assigned as aides to assist her, stating that, at times, she was left alone and helpless, and that, at other times, she was injured when she was steered by her aides into objects. She states that some of her aides seem openly hostile to her, that others seem incapable of assisting in some matters because of limited education, and that one of her aides could not read or write. Plaintiff states that, because of these issues, she desired for her aides to receive basic training in assisting the blind, but that she was unwilling to ask the aides she was concerned about to write the complaint. Plaintiff states that she went to her counselor for assistance, who referred the matter to the unit manager, who refused to assist plaintiff. Plaintiff never pursued any administrative remedies regarding this matter.

## C.

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") which provides, in part, that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). By the plain language of the statute, exhaustion of administrative remedies is a precondition to the <u>filing</u> of a prisoners civil rights action; thus, a plaintiff who filed her lawsuit before exhausting administrative remedies cannot satisfy the § 1997e(a) requirement, even if she later demonstrates that she filed a grievance and appealed it to the highest extent of the prison's grievance procedure <u>after</u> commencing the lawsuit. See <u>Dixon v. Page</u>, 291 F.3d 485 (7th Cir. 2002), <u>citing</u> <u>Perez v. Wisconsin Dep't of Corrections</u>, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to

exhaust even if the inmate demonstrates that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit).

Proper exhaustion of administrative remedy procedures for the purposes of § 1997e(a) means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. See, e.g., Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (reasoning, id. at 2387, that "[t]he text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term exhausted to mean what the term means in administrative law, where exhaustion means proper exhaustion. Section 1997e(a) refers to such administrative remedies as are available, and thus points to the doctrine of exhaustion in administrative law."). Section 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those instances where an inmate claims that exhaustion would be futile or the remedy inadequate. Id. at 741, n.6. For example, the inmate in Booth filed a grievance pursuant to the state prison's grievance procedure, but failed to appeal the denial to the intermediate or final appeal levels. Because the inmate failed to appeal the denial, the inmate was deemed to have failed to exhaust his administrative remedies. Id. at 735. Additionally, the Court in Booth held that even where inmates limited their "prayers for relief to money damages not offered through administrative grievance mechanisms. . . . Congress has mandated exhaustion clearly enough." Id. at 741.

The record discloses (i) that plaintiff has lodged no Level II or Level III appeals of denied regular grievances through the VDOC, and (ii) that she has not filed any appeals regarding adverse intake decisions to the Regional Ombudsman. Plaintiff received orientation regarding the institutional grievance procedures at Fluvanna. Plaintiff never submitted any

regular grievances regarding the allegations in paragraphs 8(B) and (E) of her complaint, and thus failed to exhaust all available administrative remedies regarding these allegations. And, although she submitted regular grievances regarding the allegations raised in paragraphs 8(A), (C), (D), and (F) of the complaint, those grievances were rejected at the intake level, plaintiff did not appeal the intake decisions, and therefore all available administrative remedies were not exhausted as to these allegations. See Woodford, 126 S. Ct. at 2382 ("Prisoners must now exhaust all available remedies. . . ."). Because plaintiff did not utilize all steps of the grievance procedures when they were available to her, I conclude that she failed to exhaust all available administrative remedies. Id. at 741, n.6; see also Ngo, 126 S.Ct. at 2384-86 (upholding district court's finding that plaintiff failed to properly exhaust all available administrative remedies where initial grievance was rejected because it was not filed within the 15 working day period prescribed by the regulations of the California Department of Corrections); Cooper v. Schilling, et al., Civil Action No. 7:06-cv-00296 (W.D. Va. November 20, 2006) (Turk, S.J.), slip op. at 3-5, 2006 WL 3359592 at *2 (Virginia inmates are required to exhaust claims in accordance with the grievance procedures established by the VDOC); Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004) (same); Lawrence v. Va. Dep't of Corr., 308 F. Supp. 2d 709, 718 (E.D. Va. 2004) (where prison policies require inmates to file grievances within a specified time period following a complained-of event, but plaintiff is unable to do so because the period has expired, plaintiff is still required to "appeal[] [the] procedural denials to the point of exhaustion of . . . administrative remedies," id. at n. 14, before filing lawsuit in federal court).

Plaintiff submitted, inter alia, a regular grievance concerning Braille and GED program instruction; however, the grievance was rejected at the intake stage, and was returned to plaintiff with the explanation that the issue was "Non-Grievable" as a "[m]atter[] beyond the control of

the [VDOC]" and that the "[VDOC] does not govern [VDCE] policy or procedure concerning classes/programs offered, student enrollment, student eligibility, etc. You must contact the [VDCE] principle [*sic*] concerning this matter." Plaintiff did not appeal this intake decision to the Regional Ombudsman. Exhaustion provides an agency with an "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford, 126 S. Ct. at 2385 (quoting McCarthy v. Madigan, 530 U.S. 140, 145 (1992)). By not appealing the intake decision, plaintiff did not afford the VDOC a full and complete opportunity to determine whether the grievance met the criteria for intake, and if so, to then review her grievance and if necessary give the VDOC and the VDCE an opportunity to correct possible mistakes in its policies regarding Braille and GED program instruction for blind inmates.[9]

Plaintiff contends that she was "thwarted" in her efforts to follow the grievance procedure, and that "any failure to comply with what prison officials now claim is the required grievance procedure resulted from the advice she received from the very official responsible for administering the grievance procedure and from the refusal of prison officials to provide her with appropriate assistance and information." However, the record in this action includes numerous informal complaints and regular grievances submitted by plaintiff, demonstrating that

---

[9] Plaintiff is correct in her statement that "there is no prerequisite . . . to the filing of an Informal Complaint, and the only prerequisite for filing a Regular Grievance is an informal complaint." However, she erroneously "conclude[s] that a Request for Services falls outside the Offender Grievance Procedure and is the only available remedy to be pursued before filing suit." An improperly denied request for services is simply one of the circumstances that forms the basis upon which an informal complaint is filed, thus properly initiating the grievance process. To satisfy the exhaustion requirements of the PLRA, an inmate must appeal any denial of relief through all available levels of review in the administrative grievance process. As I have already observed, proper exhaustion entails completion of all the steps in the prison administrative process, in accordance with all applicable rules and deadlines. Woodford, 126 S. Ct. at 2386-87. On every occasion when plaintiff submitted a regular grievance that was not accepted for intake because it constituted a "request for services," plaintiff failed to appeal the intake decision.

she was able to access the grievance process, and that prison officials did not interfere with that access.[10] Plaintiff contends that her counselor and unit manager refused to provide her with assistance concerning her requests and grievances; in particular, she asserts that she complained about the prisoner aides assigned to her, and that any defects in exhaustion were the direct result of those refusals. Plaintiff does not elaborate exactly how her counselor and unit manager should have assisted her. Prison officials are not responsible for affirmatively assisting inmates

---

[10] See, e.g., Graham v. County of Gloucester, Va., 668 F. Supp. 2d 734, 739 (E.D. Va. 2009) ("the court cannot conclude based upon the undisputed facts that Plaintiff was affirmatively prevented from utilizing the system or that he was wholly without any responsibility for his failure to grieve."). An administrative remedy is not considered to have been available if a prisoner, though no fault of her own, was prevented from availing herself of it. Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citation omitted). To be entitled to bring suit in federal court, a prisoner must have utilized all available remedies, in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively; having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. Id. (citations omitted). Here, the record shows that prison officials did not "prevent" plaintiff from using the administrative remedies process, given that she accessed it, but simply failed to pursue her complaints and grievances to the highest available level. Plaintiff points to Bacon v. Greene, 319 Fed. App'x 256 (4th Cir. 2009). In Bacon, the plaintiff complained that correctional officers had failed to intervene during an assault and that the warden had ignored the plaintiff's request for the names of officers on duty during the incident. Id. at 257. The district court granted the warden's motion for summary judgment on the ground that plaintiff had failed to exhaust administrative remedies. Id. On appeal, plaintiff argued that he had been unable to pursue those remedies because the warden had not provided plaintiff with the names of the guards on duty. Id. The United States Court of Appeals for the Fourth Circuit determined that "there [was] a genuine issue as to the availability of administrative remedies" because plaintiff had "asserted throughout the proceedings that [the warden] had ignored his requests for disclosure of information regarding the officers on duty at the time of the assault." Id. at 258. Plaintiff "further asserted that this lack of information rendered him incapable of filing a request for administrative remedy that would comply with institution procedure." Id. Accordingly, the Fourth Circuit vacated the judgment of the district court and remand the matter for further proceedings, specifically remarking that the Court did "not hold that administrative remedies have been properly exhausted, but only that there is a genuine issue as to whether officials withheld information that made an administrative filing futile or impossible." Id. Here, there is nothing to indicate that prison officials withheld information that would have made proper exhaustion futile or impossible. To be sure, if prison officials impede a prisoner's attempts to exhaust by denying that inmate the proper forms, by failing to educate the inmate on the grievance process, or by failing to respond to a proper grievance, a prisoner may be excused from exhaustion requirements. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Arnold v. Goetz, 245 F. Supp. 2d 527, 538-39 (S.D. N.Y . 2003); Amaro v. Taylor, 170 F. Supp. 2d 460, 464 (D. Del. 2000). Such circumstances are not present here.

in correctly completing grievance forms.[11] Plaintiff is responsible for completing those forms, whether through the assistance of another inmate (for example, one of the prisoner aides

---

[11] Plaintiff argues that having her grievances rejected at the intake stage because they were "requests for services" resulted in "confusion." Essentially, she contends that, because of this "confusion," the administrative remedies system was "unavailable" to her. The Supreme Court has issued three major opinions strictly applying the PLRA's exhaustion requirement and eliminating exceptions to the exhaustion requirement that lower courts had recognized. Booth v. Churner, discussed supra, held that exhaustion was required, regardless of whether the system was simple, fast, or effective; even if the grievance system could not provide the relief sought by the prisoner, she must still utilize it. Porter v. Nussle, 534 U.S. 516 (2002), held that the exhaustion requirement applied to all types of claims arising out of the prison context, no matter the nature of the claim or the type of relief sought. Woodford v. Ngo, discussed supra, determined that exhaustion is mandatory for all cases, cannot be excused in the discretion of the district court; in order to comply with the exhaustion requirement, grievances must be properly and timely filed, appealed to the highest level, and in full compliance with all procedural requirements. "Thus, the Supreme Court has consistently ruled in favor of uniform application of the PLRA and strict compliance with its exhaustion requirement." Graham v. County of Gloucester, Va., 668 F. Supp. 2d 734, 739 (E.D. Va. 2009) ("the court cannot conclude based upon the undisputed facts that Plaintiff was affirmatively prevented from utilizing the system or that he was wholly without any responsibility for his failure to grieve." (Emphasis added.)). The Supreme Court has "stress[ed] the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirements. . . ." Booth, 532 U.S. at 741 n. 6.

> If exhaustion could be excused when a prisoner claimed a lack of specific knowledge about the grievance process, an "awareness exception" requiring courts to analyze and determine prisoners' knowledge levels of the grievance process at given points in time would be undoubtedly routinely invoked. Irrespective of whether a prisoner's knowledge of the grievance process would be assessed objectively or subjectively, such a time-consuming task is fraught with uncertainty. Accordingly, the court declines to create such a broad exception to the PLRA's bright-line requirement of exhaustion.

Graham, 668 F. Supp. 2d at 740. See also Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances."); Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) ("Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them."); Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D. N.Y. 1998)) ("it is beyond the power of this court-or any other-to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."); Twitty v. McCoskey, 226 Fed. App'x 594, 596 (7th Cir. 2007) (unpublished) ("[a] prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance."); Brock v. Kenton County, 93 Fed. App'x 793 (6th Cir. 2004) (unpublished) (rejecting an inmate's argument that exhaustion was unavailable to him because he was unaware of the system); Gonzales-Liranza v. Naranjo, 76 Fed. App'x 270, 273 (10th Cir. 2003) (unpublished) (rejecting prisoner's claim that he was unaware of procedures and thus could not utilize them, reasoning that, "even accepting plaintiff's allegation that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement.").

-14-

assigned to her), family members, friends, or lawyers. In any event, plaintiff is able to access the grievance system, and prison officials have not thwarted her attempts to do so.

Actions arising out of allegations concerning prison conditions cannot be brought in federal court until all available administrative remedies have been exhausted, and § 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Booth, 532 U.S. at 741 n. 6. There is no genuine issue of material fact in this case as to the issue of exhaustion. Plaintiff failed to properly exhaust the administrative remedies available to her through the inmate grievance system, as required by 42 U.S.C. § 1997e(a), before filing the instant lawsuit.[12] Accordingly, the court will grant summary judgment in favor of defendants.

## IV.

For the stated reasons, defendants' motion for summary judgment (docket no. 14) on the ground that plaintiff failed to exhaust all available administrative remedies will be granted, plaintiff's motion for summary judgment (docket no 21) will be denied as moot, and defendants' cross-motion for summary judgment will be denied as moot. Additionally, as previously noted herein, plaintiff's motion to dismiss (docket no. 20) one of her claims without prejudice will be granted, and the parties' joint motion to supplement the record (docket no. 39) will be granted. Any other pending motions will be denied as moot, and the case will be stricken from the court's active docket.

---

[12] I note that pro se prisoner complaints are frequently dismissed for failure to exhaust all available administrative remedies. In the instant action, plaintiff is represented by counsel. The docket in this case suggests that counsel shepherded plaintiff through the filing of the complaint, which required plaintiff to obtain and submit her inmate financial data and consent to the payment of the filing fee. Counsel could have advised plaintiff regarding the proper exhaustion of administrative remedies.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __6th__ day of April, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE